**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

|  |  |
|---|---|
| | * |
| **BAYSIDE FIRE PROTECTION, LLC,** | |
| | * |
| **Plaintiff,** | |
| | * |
| **v.** | **Case No.: GJH-20-2794** |
| | * |
| **EVEREST INDEMNITY INSURANCE CO.,** | |
| | * |
| **Defendant.** | |
| | * |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

In this action, Plaintiff Bayside Fire Protection, LLC, requests a declaration that Defendant Everest Indemnity Insurance Company was required to defend Bayside in a lawsuit pursuant to an insurance policy. ECF No. 4. Pending before the Court is Defendant Everest's Motion to Dismiss for Failure to State a Claim, ECF No. 10, and Plaintiff Bayside's Motion for Partial Summary Judgment, ECF No. 12. A hearing on the Motions is not necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons stated below, the Court will deny Everest's Motion to Dismiss and grant Bayside's Motion for Partial Summary Judgment.

## I.   BACKGROUND[1]

Bayside is a Maryland company that provides fire suppression systems. ECF No. 4 ¶ 4.[2] Everest is a Delaware corporation that is licensed to transact insurance business in Maryland. *Id.* ¶ 5. Between 2014 and 2015, 539 Randolph Street NW, LLC, a developer and non-party to this action, converted a residential building into a three-unit condominium in Washington, D.C. *Id.* ¶ 7. The general contractor, Grange Contracting, LLC, subcontracted the installation of the fire suppression and sprinkler systems to Bayside. *Id.* One of the condo units was purchased by Andrew L. Engle and the Estate of Barry S. Engel, non-parties here, who were dissatisfied with the condition of the unit and of the property. *Id.* ¶ 9.

The Engels filed suit on May 11, 2018, in the Superior Court of the District of Columbia against Grange and various subcontractors involved in the construction. *Id.* ¶ 9 ("D.C. Lawsuit").[3] Bayside was added to the lawsuit in June of 2019. *Id.* ¶ 10. The Engels alleged that Bayside had negligently "failed to install a fire alarm at the exterior of the Property," "failed to provide sprinkler coverage for the exterior balcony," "failed to install the sprinkler manifold in an accessible location," "failed to install a fire department connection," and "failed to install a

---

[1] The Court takes judicial notice of state court documents provided by both parties. *See* ECF No. 4-1 (First Amended Complaint filed in D.C. Superior Court asserting claims against Bayside); ECF No. 14-1 (D.C. Superior Court Order granting Bayside's Motion for Summary Judgment as to the negligence claims against it but denying summary judgment as to the crossclaims); *see also* ECF Nos. 21-1, 21-2 (crossclaims asserted against Bayside). The Court may consult these documents without converting the Motion to Dismiss into one for Summary Judgment. *See Eng. v. Ryland Mortg. Co.*, No. 16-cv-3675-GJH, 2017 WL 3475674, at *1 n.2 (D. Md. Aug. 11, 2017) (citing *Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700. 705 (4th Cir. 2007) ("In reviewing the dismissal of a complaint under Rule 12(b)(6), we may properly take judicial notice of matters of public record."); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236. 1239 (4th Cir. 1989) (noting that the "most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.") (internal citations omitted)).

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[3] The case is *Andrew L. Engel, et al. v. 539 Randolph Street, NW, LLC, et al. See* ECF No. 4-1.

fire annunciator panel[,]" among other things. *Id.* ¶ 11. The Engels sought over a million dollars in damages from Bayside. *Id.* Bayside timely answered and defended itself. *Id.* ¶ 12.

Prior to this suit, Bayside had obtained a general liability insurance policy from Everest that was effective from July 21, 2018 until July 21, 2019. *Id.* ¶ 14; *see also* ECF No. 4-2 ("CGL Policy"). The CGL Policy contained exclusions for damage to property that was not physically injured due to a defect in the insured's work, as well as any loss Bayside incurred to repair its own work due to a defect, deficiency, or dangerous condition. ECF No. 4-2 at 18. Bayside alleges that enhanced coverage to the CGL Policy was made through the Errors and Omissions Endorsement. *Id.* ¶ 16; *see also* ECF No. 4-3 ("E&O Endorsement"). The E&O Endorsement required Everest to "pay those sums that the insured becomes legally obligated to pay as compensatory damages . . . because of any 'loss' that results from a negligent act, error or omission to which this insurance applies.'" ECF No. 4-3 at 1. Loss is defined as "injury or damage other than 'bodily injury,' 'property damage,' or 'personal and advertising injury.'" *Id.* at 4. Plaintiff alleges that it reasonably expected that any alleged damage from negligent acts would fall under this coverage. ECF No. 4 ¶ 18.

In December 2019, Bayside demanded that Everest defend it in the D.C. Lawsuit and pay any resulting liability. *Id.* ¶ 19. Everest refused, claiming that the exclusions set forth in the CGL Policy also applied to the E&O Endorsement and that the D.C. plaintiffs' claims fell under several exclusions. *Id.* ¶ 20. Bayside initially filed this Complaint in the Circuit Court for Calvert County, Maryland, on August 21, 2020. ECF No. 1. Bayside brings two counts in the Complaint. In Count I, Bayside seeks a declaratory judgment pursuant to § 3-406 of the Maryland Uniform Declaratory Judgments Act that the CGL Policy and Errors and Omissions Endorsement provide coverage for the claims asserted in the D.C. Lawsuit. *Id.* ¶ 25. Bayside requests that the Court

order Everest to defend Bayside in the D.C. Lawsuit, and direct Everest to indemnify Bayside for any loss or liability in that lawsuit. *Id.* In Count II, Bayside seeks damages to cover its need to retain and pay counsel to defend in the D.C. Lawsuit and for attorneys' fees in bringing this action against Everest. *Id.* ¶¶ 26–30.[4] Everest removed the action to this Court on the basis of diversity jurisdiction on September 25, 2021. ECF No. 6.

Everest filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 16, 2020. ECF No. 10. Bayside responded in opposition on October 22, 2020. ECF No. 13. Everest filed a reply on November 5, 2020. ECF No. 14. In the Reply, Everest argued that Bayside had been dismissed from the D.C. Lawsuit, and thus, the action must be dismissed or Bayside must be ordered to amend the Complaint to clarify that the action applies to the "narrow question" of Bayside's entitlement to attorneys' fees during the time Bayside alleged that Everest was required to defend. *Id.* at 2. Bayside then filed a Motion for Leave to File Sur-Reply on November 10, 2020, arguing that Everest had improperly raised a new argument. ECF No. 16. Everest opposed this motion. ECF No. 19.

During this time, Bayside also filed a Motion for Partial Summary Judgment as to Count I of the Complaint. ECF No. 12. Bayside requested summary judgment on its claim that the D.C. plaintiffs' claims fell under the scope of Bayside' coverage with Everest and thus, Everest was required to defend it. *Id.* at 2. Everest filed a response in opposition on November 5, 2020. ECF No. 15. Bayside filed a reply on November 13, 2020. ECF No. 17.

This Court granted leave to file a sur-reply on February 11, 2022, ECF No. 20, which Bayside then filed, ECF No. 21. In the Sur-Reply, Bayside clarified that, on April 12, 2021, the crossclaims against it were dismissed, but Bayside's request for a determination that Everest was

---

[4] In Count II, Bayside asks for an entry of judgment of $75,000 but also notes that it "incurred and will continue to incur attorney's fees." ECF No. 4 ¶ 30.

required to defend it in the D.C. Lawsuit remained, as Bayside would ultimately have been responsible for any damages by contribution or indemnification for the eight-month period Bayside remained in the D.C. lawsuit *Id.* at 2. Therefore, Bayside argues that this Court must still adjudicate the pending Motion to Dismiss and the pending Motion for Partial Summary Judgment. *Id.*

## II.   STANDARD OF REVIEW

### A.  Motion to Dismiss

The purpose of a motion to dismiss is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The U.S. Supreme Court has clarified the standard applicable to Rule 12(b)(6) motions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). These cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). This showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. In so doing, the Court must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999).

Generally speaking, "a motion to dismiss 'is rarely appropriate in a declaratory judgment action.'" *120 W. Fayette St., LLLP v. Mayor & City Council of Baltimore City*, 413 Md. 309, 355, 992 A.2d 459, 487 (2010) (quoting *Broadwater v. State*, 303 Md. 461, 466, 494 A.2d 934, 936 (1985)); *see also Palmer v. Audi of Am., Inc.*, No. 14-cv-3189-GJH, 2015 WL 222127, at *2

(D. Md. Jan. 13, 2015) (citing Md. Cts. & Jud. Proc. Art., § 3-409(a)(1) (authorizing declaratory judgments only when the complaint establishes that "[a]n actual controversy exists between contending parties")). However, a declaratory judgment "can be appropriate on certain occasions to resolve questions of insurance policy coverage that are 'independent and separable from the claims asserted in a pending suit by an injured third party.'" *Nautilus Ins. Co. v. BSA Ltd. P'ship*, 602 F. Supp. 2d 641, 649 (D. Md. 2009) (quoting *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 405, 347 A.2d 842, 848 (1975)). Thus, a court may decide whether "the allegations in the underlying . . . suit create a duty . . . to defend[.]" *Id.*

### B. Motion for Summary Judgment

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23. A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only genuine if sufficient evidence favoring the

nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

"Summary judgment is appropriate in a declaratory action, although it is 'the exception rather than the rule.'" *Megonnell v. United Servs. Auto. Ass'n.*, 368 Md. 633, 642, 796 A.2d 758, 763 (2002) (quoting *Nationwide Mut. Ins. Co. v. Scherr*, 101 Md. App. 690, 695, 647 A.2d 1297 (1994), *cert. denied*, 337 Md. 214, 652 A.2d 670 (1995) (internal quotations and citations omitted)). "[S]ummary judgment may be warranted where there is no dispute as to the terms of an insurance contract but only as to their meaning." *Nationwide Mut. Ins. Co. v. Scherr*, 101 Md. App. 690, 695, 647 A.2d 1297, 1299 (1994) (citing *Loewenthal v. Sec. Ins. Co. of Hartford*, 50 Md. App. 112, 117, 436 A.2d 493, 496 (1981)). When "liability rests on the construction of the disputed language, rather than on the language itself, this is a proper question of law for the court." *Id.* Finally, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre- or post-discovery).

## III.   DISCUSSION

The parties agree that all claims and crossclaims against Bayside in the underlying D.C. Lawsuit have now been dismissed. *See* ECF No. 14 at 1; ECF No. 21 at 2. The controversy that remains is whether Everest was required to defend Bayside during the D.C. Lawsuit. *See* ECF No. 4 ¶¶ 28–30.[5]

---

[5] Bayside's Motion for Partial Summary Judgment is the substance of Bayside's response to Everest's Motion to Dismiss. *See* ECF No. 13 at 3. There are also no disputes of fact, and the question that remains is that of law. ECF No. 15 at 1, 3. Thus, the Court considers the arguments from both Motions together.

As the parties agree, ECF No. 10-2 at 2; ECF No. 12-2 at 4, Maryland law applies. *See W.C. & A.N. Miller Dev. Co. v. Cont'l Cas. Co.*, 814 F.3d 171, 176 (4th Cir. 2016) ("'The locus contractu of an insurance policy is the state in which the policy is delivered and the premiums are paid.'") (quoting *Cont'l Cas. Co. v. Kemper Ins. Co.*, 173 Md. App. 542, 920 A.2d 66, 69 (2007)). "To determine whether an insurer has a duty to defend in Maryland, 'a court simply compares the insurance policy with the complaint in the underlying action.'" *Cato Inst., Inc. v. Cont'l Cas. Co.*, No. 11-cv-1418-JFM, 2011 WL 3626784, at *2 (D. Md. Aug. 16, 2011) (quoting *Nautilus Ins. Co. v. BSA Ltd. P'ship*, 602 F. Supp. 2d 641, 649 (D. Md. 2009)). "Courts generally consider policy exclusions as affirmative defenses." *Id.* (citing *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1164 (4th Cir. 1982)). Affirmative defenses may be reached by a motion to dismiss, but the facts sufficient to rule on an affirmative defense must clearly appear on the face of the complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc).[6]

"'Under Maryland law, insurance policies are interpreted in the same manner as contracts generally; there is no rule in Maryland that insurance policies are to be construed most strongly against the insurer.'" *Catalina Enterprises, Inc. Pension Tr. v. Hartford Fire Ins. Co.*, 67 F.3d 63, 65 (4th Cir. 1995) (citing *Collier v. MD–Individual Practice Ass'n*, 327 Md. 1, 5, 607 A.2d 537 (1992)). "In interpreting an insurance policy under Maryland law, 'the primary principle of construction is to apply the terms of the insurance contract itself.'" *Cato Inst., Inc.*, 2011 WL 3626784, at *3 (quoting *Kendall v. Nationwide Ins. Co.*, 348 Md. 157, 702 A.2d 767, 771 (Md.1997) (internal quotations omitted)). "Unless there is an indication that the parties intended to use words in a special technical sense, the words in a policy should be accorded their 'usual,

---

[6] The CGL Policy, ECF No. 4-2, and the E&O Endorsement, ECF No. 4-3, were attached to the Complaint, and are properly considered by the Court in ruling on the Motion to Dismiss, *see* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

ordinary, and accepted meaning.'" *W.C. & A.N. Miller Dev. Co.*, 814 F.3d at 176 (quoting *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 625 A.2d 1021, 1031 (1993) (citations omitted)). "A word's ordinary signification is tested by what meaning a reasonably prudent layperson would attach to the term." *Id.* (citation omitted). "'The interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law[.]'" *White Pine Ins. Co. v. Taylor*, 233 Md. App. 479, 493, 165 A.3d 624, 631 (2017) (quoting *Spacesaver Systems, Inc. v. Adam*, 440 Md. 1, 8, 98 A.3d 264 (2014)).

"'[A]n insurer has a duty to defend its insured if there is a potentiality that the claim may be covered by the policy; that obligation is ordinarily determined by the allegations in the underlying tort action.'" *Cato Inst., Inc.*, 2011 WL 3626784, at *3 (quoting *Sullins v. Allstate Ins. Co.*, 340 Md. 503, 667 A.2d 617, 619–20 (Md. 1995)). The allegations must state a legal claim within the policy coverage. *Reames v. State Farm Fire & Cas. Ins.*, 111 Md. App. 546, 683 A.2d 179, 186 (Md. App. 1996). "'Even if a tort plaintiff does not allege facts which clearly bring the claim within the policy coverage, the insurer still must defend if there is a potentiality that the claim could be covered by the policy.'" *Trice, Geary & Myers, LLC v. Camico Mut. Ins. Co.*, 459 F. App'x 266, 272 (4th Cir. 2011) (quoting *Lloyd E. Mitchell, Inc. v. Maryland Cas. Co.*, 324 Md. 44, 62 n.4, 595 A.2d 469, 478 n.4 (1991)). "'If there is a possibility, even a remote one, that the plaintiff's claims could be covered by the policy, there is a duty to defend.'" *Id.* (quoting *Litz v. State Farm Fire & Cas. Co.*, 346 Md. 217, 231, 695 A.2d 566, 572 (1997)); *see also Selective Way Ins. Co. v. Nationwide Prop. & Cas. Ins. Co.*, 242 Md. App. 688, 710, 219 A.3d 20, 32 (2019), *aff'd*, 473 Md. 178, 248 A.3d 1044 (2021).

When an insurance contract is ambiguous, "any doubt as to whether there is a potentiality of coverage under [the] insurance policy is to be resolved in favor of the insured." *Clendenin*

*Bros. v. U.S. Fire Ins. Co.*, 390 Md. 449, 889 A.2d 387, 394 (2006) (quoting *Chantel Assocs. v.*

*Mount Vernon Fire Ins. Co.*, 338 Md. 131, 656 A.2d 779, 786 (1995)). "Maryland courts have

established a two-part inquiry for determining whether an insurer has a duty to defend its

insured. First, the court must determine 'the coverage and . . . the defenses under the terms and

requirements of the insurance policy.'" *Nautilus*, 602 F. Supp. at 648 (quoting *St. Paul Fire &*

*Marine Ins. Co. v. Pryseski*, 292 Md. 187, 438 A.2d 282, 285 (1981)). "This inquiry 'focuses

upon the language and requirements of the policy.'" *Id.* "Second, focusing upon the allegations

of the underlying suit, the court must determine whether the 'allegations in the tort action

potentially bring the tort claim within the policy's coverage.'" *Id.*

### A.  The Policies

There are two relevant policies: the CGL Policy and the E&O Endorsement. The CGL

Policy provides, in relevant part, that:

> We will pay those sums that the insured becomes legally obligated
> to pay as damages because of "bodily injury" or "property damage"
> to which this insurance applies. We will have the right and duty to
> defend the insured against any "suit" seeking those damages.
>
> However, we will have no duty to defend the insured against any
> "suit" seeking damages for "bodily injury" or "property damage" to
> which this insurance does not apply . . .
>
> This insurance only applies to "bodily injury" and "property damage" only if:
> 1. The "bodily injury" or "property damage" is caused by an "occurrence" that
>    takes place in the "coverage territory";
> 2. The "bodily injury" or "property damage" occurs during the policy period;
>    and
> 3. Prior to the policy period, no insured . . . knew that the "bodily injury" or
>    "property damage" had occurred, in whole or in part.

ECF No. 4-2 at 14. The CGL Policy also provides for the following exclusions:

> This insurance does not apply to:

    a.  "Bodily injury" or "property damage" expected or intended from the standpoint of the insured . . .

j. "Property damage" to . . .
6.  That particular part of any property that must be restored, repaired[,] or replaced because "your work" was incorrectly performed on it.

k. "Property damage" to "your product" arising out of it or any part of it.

l. "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." . . .

m. "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

ECF No. 4-2 at 15, 17, 18. The CGL Policy also contains definitions:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time . . .

"Impaired property" means tangible property, other than "your product" or "your work[,]" that cannot be used or is less useful because:
    a.  It either incorporates 'your product' or 'your work,' that is known or thought to be defective, deficient, inadequate or dangerous; or
    b.  You have failed to fulfill the terms of a contract or agreement;
If such property can be restored to use by:
    a.  The repair, replacement, adjustment, or removal of "your product" or "your work"; or
    b.  Your fulfilling the terms of the contract or agreement . . .

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions . . .

"Property damage" means:
a.  Physical injury to tangible property, including all resulting loss of use of that property…or

      b.  Loss of use of tangible property that is not physically injured.

"Your product"
a.  Means:
1.  Any goods or products, other than real property, manufactured, sold, handled, or distributed or disposed of by
    a.  You . . .

"Your work":
a.  Means:
    1.  Work or operations performed by you or on your behalf; and
    2.  Materials, parts, or equipment furnished in connection with such work or operations.
b.  Includes
    1.  Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of "your work," and
    2.  The providing of or failure to provide warnings or instructions.

*Id.* at 26, 28, 29.

The E&O Endorsement, which notes that it "modifies insurance provided" under the

CGL Policy, provides in relevant part that:

> We will pay those sums that the insured becomes legally obligated to pay as compensatory damages in excess of the deductible or self-insured retention, if any, because of any "loss" that results from a negligent act, error or omission to which this insurance applies.

ECF No. 4-3 at 1. In the E&O, "loss" is defined as "injury or damage other than 'bodily injury,'

'property damage,' or 'personal and advertising injury.'" *Id.* at 4. The E&O also provides for the

following exclusions:

> For the purposes of insurance provided by this endorsement, the exclusions in the Commercial General Liability Coverage Form, and in all the endorsements, that apply to "bodily injury", "property damage" or "personal and advertising injury" also apply to "loss" . . .

> The insurance does not apply to . . ."[b]odily injury," "property damage" or "personal and advertising injury."

ECF No. 4-3 at 2, 3.

In determining what is covered, the Court must "focus on the language of the insurance policy. 'When interpreting the meaning of an insurance policy under the first prong of our analytical paradigm, we construe the instrument as a whole to determine the intention of the parties.'" *Trice, Geary & Myers, LLC*, 405 F. App'x at 272–73 (quoting *Clendenin Bros., Inc. v. U.S. Fire Ins. Co.*, 390 Md. 449, 458, 889 A.2d 387, 393 (2006) (citations omitted)). "In determining the boundaries of coverage, a court construes an insurance policy just as it does any other contract, by giving its terms their 'customary, ordinary, and accepted meaning.'" *Id.* (quoting *Aetna Cas. & Sur. Co.*, 337 Md. at 104, 651 A.2d at 862 (citation omitted)).

The CGL policy is an "occurrence" policy, ECF No. 4-2 at 14, and the E&O Endorsement is a "claims made" policy, ECF No. 4-3 at 1. Everest states that "the E&O Endorsement in the Everest Policy accomplishes the 'generally understood' purpose of professional liability coverage." ECF No. 10-2 at 23. The Fourth Circuit has explained that, "as a general rule, professional liability insurance coverage is tailored to provide coverage for special risks inherent in the specific profession of the insured, while commercial general liability insurance coverage is meant to cover risks generally borne by anyone in a commercial enterprise." *Tankovits v. Del Suppo, Inc.*, 129 F. App'x 829, 835 (4th Cir. 2005); *see also Mut. Fire, Marine & Inland Ins. Co. v. Vollmer*, 306 Md. 243, 254, 508 A.2d 130, 135 (1986) (explaining that, generally speaking, an "occurrence policy . . . cover[s] liability inducing events occurring during the policy term, irrespective of when an actual claim is presented. Conversely, 'claims made' policies cover liability inducing events if and when a claim is made during the policy term, irrespective of when the events occurred . . . Claims made policies are also useful to the professional person to provide excess coverage in addition to 'occurrence' policy.").

13

By the plain terms, as relevant here, the CGL Policy covers "bodily injury" or "property damage" caused by an accident. ECF No. 4-2 at 14. In contrast, the E&O Endorsement covers "injury or damage" from negligence that is not "bodily injury" or "property damage." ECF No. 4-3 at 4.

### B.  The D.C. Lawsuit

The D.C. plaintiffs alleged that "Defendant Bayside breached the duty of care to the Plaintiffs by installing the fire alarm systems in a manner that violated [building codes], including failing to install a fire alarm at the exterior of the Property, . . . by failing to provide any sprinkler protection for the exterior balcony[,] by failing to install the sprinkler manifold in a building foyer accessible to the public which contains a fire department connection or annunciator connection at the flow switch, and by failing to install a fire annunciator panel at all." ECF No. 4-1 ¶ 193 (First Amended Complaint).[7] The D.C. plaintiffs argued that the poor work "posed fire and life safety issues, including, but not limited to, an inadequately designed and installed sprinkler system, inadequate fire protection materials between floors in the Property, inadequate fire stops . . . , a lack of fire-dampers for the HVAC ductwork, a lack of fire-blocking for concealed spaces, all in direct violation of applicable building codes[.]" *Id.* ¶ 117.

The D.C. plaintiffs alleged that this breach led to "serious risk of personal injury" and "liability . . . to renters, arising from the possibility of fire spreading through the Property due to the faulty installation of the fire sprinkler system." *Id.* ¶ 194. The D.C. plaintiffs allege that, because of the faulty work of Bayside and other defendants, the "value of the Property has been seriously diminished," that tenants were forced to move out, and that the plaintiffs would "incur

---

[7] A copy of the Amended Complaint in the D.C. Lawsuit was attached to the Complaint in this action. *See* ECF No. 4-1.

additional costs associated with . . . rebuilding the Property to the sum of hundreds of thousands of dollars." *Id.* ¶¶ 130, 131. The plaintiffs alleged that they suffered financial damage and pain and suffering. *Id.* ¶ 195. Plaintiff says that any coverage would come under the E&O Endorsement. *See* ECF No. 13 at 4.[8]

### 1. "Loss"

The Court first considers whether the D.C. plaintiffs alleged a covered "loss." To fall under the E&O Endorsement, a "'loss' that results from a negligent act, error, or omission" must be alleged. *See* ECF No. 4-3 at 1. "Loss" is an injury or damage that is not "bodily injury" or "property damage." *Id.* at 4.

"In determining what the complaint has actually alleged, 'the words of a pleading will be given reasonable construction.'" *Allen v. Gen. Star Indem. Co.*, No. 11-cv-1826-WDQ, 2012 WL 764418, at *6 (D. Md. Mar. 6, 2012) (quoting *Lapides v. Trabbic*, 134 Md. App. 51, 758 A.2d 1114, 1116 (Md. Ct. Spec. App. 2000)). "It is the substance of the underlying claim, not its label, that controls in duty-to-defend and coverage cases." *Id.* (quoting *Travelers Indem. Co. of Am. v. Coleman*, 236 F. Supp. 2d 513, 516 (D. Md. 2002)). In addition, "[i]f some of the claims against an insured fall within the terms of coverage and some without, the insurer must still defend the entire claim." *Mut. Ben. Grp. v. Wise M. Bolt Co.*, 227 F. Supp. 2d 469, 475 (D. Md. 2002) (citing *Hartford Accident v. Sherwood*, 111 Md. App. 94, 107, 680 A.2d 554 (1996), *vacated on other grounds*, 347 Md. 32, 698 A.2d 1078 (1997)); *see also Selective Way Ins. Co.*, 242 Md.

---

[8] Bayside asserts that the D.C. plaintiffs' claims "are subject to coverage under the [E&O Endorsement] but would not be covered under the CGL Policy[.]" ECF No. 13 at 4. The CGL Policy requires an "occurrence" to happen during the "policy period." ECF No. 4-2 at 14. In contrast, the E&O Endorsement requires a claim for "loss" to be made during the policy period and requires that the negligent act happen on or after the retroactive date. ECF No. 4-3 at 1. Everest states that the retroactive date was July 21, 2014. ECF No. 10-2 at 5. Thus, these requirements are satisfied.

App. at 727 (explaining that "the duty to defend extends to an entire lawsuit even where most of the allegations concern additional conduct outside of the policy.").

Everest first argues that the E&O Endorsement is not implicated because "there is no indication whether or how Bayside's professional specialization came into play." ECF No. 10-2 at 24. Everest argues that this is a "run-of-the-mill construction defect case." *Id.* Everest is incorrect. Bayside was hired to install fire safety and sprinkler systems, as well as fire blocking materials, a fire annunciator panel, and fire alarms. ECF No. 4-1 ¶ 193. The D.C. plaintiffs objected to Bayside's installation of the systems. *Id.* The E&O Endorsement specifically covers Bayside's "fire suppression and extinguishing" operations. ECF No. 4-3 at 1. Thus, the Court finds that Bayside's work on the condo unit and the property does fall under the "covered operations" of the E&O Endorsement.

Everest next argues that the D.C. Lawsuit Complaint does not allege a "loss" because the D.C. plaintiffs' claims are truly for risk of bodily harm from fire. ECF No. 10-2 at 13, 20. The Maryland Court of Appeals has explained that if a plaintiff brings a claim for a "dangerous condition" before the condition actually results in bodily harm or death, "an action will lie to recover the cost of repairing the condition." *Council of Co-Owners Atlantis Condo., Inc. v. Whiting-Turner Contracting Co.*, 308 Md. 18, 35, 517 A.2d 336, 345 (1986). But the D.C. plaintiffs also claimed financial damages related to the loss of the property's use as a home and as rental income, as well as damages in diminishment of the value of the property. *See* ECF No. 4-1 ¶¶ 130, 193, 195. In addition, the D.C. plaintiffs claimed that they would need to gut and rebuild the unit and the entire property to correct negligent work performed by Bayside and the other defendants. *Id.* ¶ 194. Some of these claimed damages are due to the risk of fire, but others are due to general "poor workmanship." *Id.* ¶¶ 115, 117, 118, 130, 192, 193.

Construing the claimed damages liberally, the D.C. plaintiffs alleged a "loss." *See, e.g.*, *Mut. Ben. Grp.*, 227 F. Supp. 2d at 476 (finding that there was a duty to defend when the plaintiffs in the underlying suit alleged loss of use, damage to third party work, diminution in value, and repairing and rebuilding costs); *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 645, 679 A.2d 540, 545 (1996) (in a similarly worded policy, noting that "money spent to fix" a faulty septic system was "economic loss," while "loss of use" of the septic system was "property damage"). In addition, the policies did not define the term "damage," and thus, "damage" may be construed broadly. *See Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 781, 625 A.2d 1021, 1032 (1993) (when the policy did not define the term "damages," construing the term broadly to mean "the estimated reparation in money for detriment or injury sustained.").

Keeping in mind that the Court must liberally construe the underlying complaint, *Selective Way Ins. Co.*, 242 Md. App. at 710, the Court finds that the allegations in the D.C. lawsuit "potentially" bring the claims within the policy coverage. "[A] company has a duty to defend its insured for all claims that are potentially covered under an insurance contract[.]" *Pennsylvania Nat. Mut. Cas. Ins. Co. v. City Homes, Inc.*, 719 F. Supp. 2d 605, 611–12 (D. Md. 2010) (citing *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 679 A.2d 540, 542 (1996)). When, as here, a plaintiff alleges a variety of claims, some of which are "potentially covered" by an insurance policy, the insurer has a duty to defend. *See Mut. Ben. Grp.*, 227 F. Supp. 2d at 475 ("It is necessary under Maryland law only that there be allegations which are potentially covered by a policy, 'no matter how attenuated, frivolous, or illogical' such allegations may be.") (quoting *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 643, 679 A.2d 540 (1996)).

### 2. **Exclusions**

The Court next considers whether, even if the D.C. plaintiffs alleged a "loss," if an exclusion still bars coverage. The E&O Endorsement expressly notes that "the [CGL] exclusions . . . that apply to 'bodily injury,' 'property damage,' or 'personal and advertising injury' also apply to 'loss.'" ECF No. 4-3 at 2. Everest asserts that several exclusions are applicable here, including the exclusion of "expected or intended injury," the exclusion of damage to "your product" or "your work," and the exclusion of damage to "impaired property" or property "not physically injured" arising out of a "defect" in "your product" or "your work" or "a delay or failure" to "perform a contract or agreement." *See* ECF No. 10 at 15, 16.

The Court examines the "your product" or "your work" exclusions (exclusions k and l), the "impaired property" or "property not physically injured" exclusion (exclusion m), and the "expected or intended" injury exclusion (exclusion a). *See* ECF No. 4-2 at 15, 18.

### a. *"Your product" or "your work"*

In terms of the "your product" or "your work" exclusion, "[c]ourts have uniformly held that the purpose of exclusions such as these . . . is to remove any obligation of the insured to pay for the repair or replacement of the policyholder's own defective work or defective product." *Century I Joint Venture v. U.S. Fid. & Guar. Co.*, 63 Md. App. 545, 553, 493 A.2d 370, 374–75 (1985) (collecting cases); *see also Limbach Co. LLC v. Zurich Am. Ins. Co.*, 396 F.3d 358, 365 (4th Cir. 2005) ("By its plain language, the 'your work' exclusion only excludes coverage for damage to an insured's work that arises out of the insured's faulty workmanship. It does not exclude coverage for damage to a third party's work.").[9]

---

[9] In this case, the Fourth Circuit applied Pennsylvania law, but the difference is not dispositive. In Pennsylvania, like Maryland, "'[w]hen the policy language is clear and unambiguous, the court must give effect to the language of the contract.'" *Limbach Co. LLC v. Zurich Am. Ins. Co.*, 396 F.3d 358, 362 (4th Cir. 2005) (quoting *Travelers Cas. & Sur. Co. v. Castegnaro*, 565 Pa. 246, 772 A.2d 456, 458 (Pa. 2001)).

The "critical inquiry" in determining whether a "your work" exclusion applies is whether damage to something other than Bayside's own "product" or "work" has been alleged. *See Mut. Ben. Grp.*, 227 F. Supp. 2d at 477. Here, by the terms of the insurance contract, Bayside's work is "operations performed by you" and "materials, parts, or equipment furnished in connection with such work." ECF No. 4-2 at 28, 29. Bayside's work was the installation of the fire sprinkler and fire safety systems within the condo unit and the property. ECF No. 4-1 ¶¶ 26, 192. Thus, allegations of damage that go outside of the fire sprinkler and safety systems would not be barred by the exclusion. *See, e.g., Century I Joint Venture*, 63 Md. App. 545, 553, 493 A.2d 370, 374–75 (the "product" was the condominium unit when the business "consisted of the erection of a condominium building"); *Limbach Co. LLC*, 396 F.3d at 365 (the "your work" did not include damage to landscaping work done by a third-party); *Mut. Ben. Grp.*, 227 F. Supp. 2d at 475 ("your product" and "your work" exclusions were not implicated when the plaintiffs in the underlying action alleged damage to "not only the house itself but also to other property," including damages to furnishings and loss of use of the house).

Here, the D.C. plaintiffs have alleged not only that the fire protection and sprinkler systems did not work, but also that general poor workmanship affected the condition and value of the condo unit and the property more generally. *See* ECF No. 4-1 ¶ 130. Thus, the "your product" and "your work" exclusions only partially bar coverage, and Everest would still have a duty to defend.

  b. *"Damage to impaired property" or "property not physically injured"*

The "impaired property" exclusion bars coverage for damage to "impaired property" or "property not physically injured" that arises out of deficiencies in "your product" or "your work" or the delay or failure by an insured or anyone acting on an insured's behalf in performing the

terms of a contract. *See* ECF No. 4-2 at 18. "Impaired property" as described in the CGL Policy, means property that "cannot be used or is less than useful because" it incorporates "your product" or "your work." *Id.* at 26. In addition, the exclusion also applies to "property not physically injured," or property that is negatively affected by deficiencies in an insured's work or product. *Id.* at 18. As noted below, the scope of this exclusion, and its interaction with the purpose of the E&O Endorsement, is unclear.

> c. *Expected or intended injury*

Finally, the CGL Policy also excludes "expected or intended injury." ECF No. 4-2 at 15. In determining whether damages are "expected or intended," the court must look to the "nature of the damages." *M Consulting & Exp., LLC v. Travelers Cas. Ins. Co. of Am.*, 2 F. Supp. 3d 730, 738 (D. Md. 2014*)* (quoting *Lerner Corp. v. Assurance Co. of America*, 120 Md. App. 525, 536, 707 A.2d 906 (Md. Ct. Spec. App. 1998)). "If the damages suffered relate to the satisfaction of the contractual bargain, it follows that they are not unforeseen." *Lerner Corp. v. Assurance Co. of Am.*, 120 Md. App. 525, 536, 707 A.2d 906, 912 (1998); *see also Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 647, 679 A.2d 540, 546 (1996) (construing "occurrence" to mean "accident," which required damage that is "unexpected or unforeseen" to a reasonably prudent person). However, damage to third party work generally is not "expected or foreseen." *See Mut. Ben. Grp.*, 227 F. Supp. 2d at 476 (finding damages "unrelated and unexpected" when the plaintiffs in the underlying suit alleged "consequential damages to property other than their house").

The D.C. plaintiffs alleged that Bayside failed to properly install fire sprinkler and safety systems in violation of building codes. ECF No. 4-1 ¶ 192. These allegations, if true, show a violation of Bayside and other defendants' statements that "this construction and renovation is

being done with major building sections, including plumbing, mechanical, and electrical systems

installed as new . . . Work is to be done per industry standards and should be suitable for the

intended use." *Id.* ¶ 85. The Architect's Report for the building also stated that "all interior and

exterior construction will comply with current District of Columbia and National Building

Codes." *Id.* ¶ 86. Direct damages from the failure to accomplish obligations under the contract

would not be unexpected or unforeseen, but more indirect damages, such as to third party

property or parts of the property that were not completed by Bayside, would be unexpected.

Thus, this exclusion also partially bars coverage.

### C. Ambiguity

Bayside argues that the exclusions of the CGL Policy engulf the whole of the coverage of

the E&O Endorsement and thus, the coverage provided under the E&O Endorsement is illusory.

ECF No. 12-2 at 9.[10] Bayside asserts that it expected the E&O Endorsement to cover liability

related to its negligent work. *Id.* at 8. Everest argues that the "cost of repairing an insured's

defective construction is precisely the kind of risk that several of the exclusions to the E&O

Endorsement intend to exclude." ECF No. 10-2 at 14.

The ambiguity of a contract is a question of law. *White Pine Ins. Co.*, 233 Md. App. at

493. In Maryland, courts find ambiguity when the "distinction in the context of this specific

claim . . .  postulates that the policy insures and does not insure for the same conduct, at the same

time, and in the same respect." *Bailer v. Erie Ins. Exch.*, 344 Md. 515, 534, 687 A.2d 1375, 1385

(1997). "The test is what meaning a reasonably prudent layperson would attach to the term." *Id.*

at 521–22 (internal quotations and citations omitted). "If the terms are ambiguous, however, we

---

[10] In particular, Bayside concedes that the "impaired property" or "property not physically injured" exclusion
(exclusion m) could bar the claims, and it does not address Everest's arguments that other exclusions are also
applicable. ECF No. 12-2 at 9.

will look to evidence from extrinsic sources such as dictionaries or an interpretation of the term

employed by one of the parties before the dispute arose." *Cole v. State Farm Mut. Ins. Co.*, 359

Md. 298, 305, 753 A.2d 533, 537 (2000). An insurance contract may limit its benefits without

becoming illusory. *See, e.g.*, *Marshall v. Selective Way Ins. Co.*, No. 13-cv-1101-RDB, 2015 WL

1186442, at *4 (D. Md. Mar. 13, 2015) (explaining that "the fact that the insurance policy does

not provide . . . benefits to all persons in all situations does not mean that the benefits are

'illusory.'"). However, "[i]f the exclusion totally swallows the insuring provision, the provisions

are completely contradictory. That is the grossest form of ambiguity, and [Defendant],

unquestionably, would be obliged to defend and indemnify." *Bailer*, 344 Md. at 525.

   A reasonable interpretation of the Endorsement was that it covers Bayside for its own

negligent acts, errors, or omissions for the "covered operations" of "fire suppression and

extinguishing." ECF No. 4-3 at 1. The Endorsement plainly states that Everest "will pay those

sums that the insured becomes legally obligated to pay" because of "any 'loss' that results from a

negligent act, error, or omission[.]" ECF No. 4-3 at 1. The endorsement also states that it

"modifies insurance provided under" the CGL. *Id.*

   It is when the CGL Policy exclusions are applied that the scope of the E&O Endorsement

becomes less clear. The CGL Policy excludes "expected or intended injury," damage to "your

product" or "your work," and damage to "impaired property" or "property not physically

injured" because of a "defect" in "your product" or "your work." Applying these exclusions, it is

difficult to conceive of a scenario in which there is a "loss" from a "negligent act" that Bayside is

"legally obligated" to pay that is not excluded. "Loss" must not be property damage or bodily

injury, and "property damage" encompasses "physical injury to tangible property" and "loss of

use of tangible property that is not physically injured." ECF No. 4-2 at 28. However, loss due to

"impaired property" or "property not physically injured" is also excluded, which is property that is "less than useful" because of a defect in "your work" or "your product." *Id.* at 26. Additionally, any damage to "your work" and "your product" are also excluded. *Id.* at 28, 29. Finally, "expected loss," or loss that stems from the failure to complete a contract, is also excluded. *Id.* at 15.

It is difficult to understand how a "negligent act, error, or omission" related to Bayside's provision of "fire suppression and extinguishing" installation and materials would ever be covered, particularly because damages because of deficiencies in an insured's work are excluded. *See* ECF No. 4-2 at 18. Thus, the E&O Endorsement both seems to provide coverage for negligence and remove coverage for negligence. At best, the coverage of the E&O Endorsement is ambiguous, and at worst, it is illusory. "[A] court interpreting an insurance policy is to examine the instrument as a whole, focusing on the character, purpose, and circumstances surrounding the execution of the contract." *Bailer*, 344 Md. at 521 (citing *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 302 Md. 383, 388, 488 A.2d 486, 488 (1985)). "[A]n insurance contract will be construed against the insurer only when an ambiguity remains after considering the intentions of the parties from the policy as a whole and, if necessary, after admitting and considering any relevant parol evidence." *Id.* (citing *Cheney v. Bell Nat'l Life Ins. Co.*, 315 Md. 761, 766–67, 556 A.2d 1135, 1138 (1989)).

The only extrinsic evidence submitted was by Bayside in the Motion for Partial Summary Judgment. Bayside submitted an affidavit of its president stating that Bayside expected that deficiencies in its work would be covered under the Endorsement. ECF No. 12-1 ¶ 5. Everest contends that Bayside's interpretation was unreasonable: "Bayside's subjective expectations about the Endorsement's coverage should be disregarded when, as here, both parties'

expectations are objectively clear from the plain language of the policy[.]" ECF No. 14 at 8.

However, Everest does not offer a competing reasonable interpretation. Instead, Everest argues,

"Everest and Bayside plainly intended for the Endorsement to cover any 'injury or damage' not

excluded by the CGL Coverage Form and not excluded by the Endorsement's other exclusions."

*Id.* at 8. But Everest notably does not offer a single hypothetical scenario to explain how, when

reading the exclusions into the Endorsement, any "loss" from a "negligent act" could feasibly be

covered. *Id.* at 7.

Additionally, it is commonly understood that an "errors and omissions" endorsement is

understood to provide coverage for the insured's own negligent acts. Everest does not explain

why that common interpretation does not apply here. *See Tankovits*, 129 F. App'x at 835) (noting

the proposition that "errors and omissions" coverage is "synonymous with 'professional liability'

coverage" such that an insured is covered for injuries arising "from its negligence, errors, and/or

omissions in the execution of its professional work[.]"); *Transcon. Ins. Co. v. Caliber One*

*Indem. Co.*, 367 F. Supp. 2d 994, 1003 (E.D. Va. 2005) (noting "the commonsense proposition

that an insured purchases professional liability insurance 'to protect it[self] from its own

failures'") (quoting *Touchette Corp. v. Merchants Mut. Ins. Co.*, 76 A.D.2d 7, 11, 429 N.Y.S.2d

952, 955 (1980)).

Indeed, the scenario here is similar to *Tankovits*, in which the Fourth Circuit noted that

"the express language in the E & OE Endorsement providing that 'the coverage afforded by this

endorsement' is 'subject to the conditions and exclusions in the [Commercial General Liability]

coverage form,' appears to eliminate the potential for any coverage under the E & OE

Endorsement, thus making coverage under such endorsement illusory." *Tankovits*, 129 F. App'x

at 836 n.2; *see also Transcon. Ins. Co.*, 367 F. Supp. 2d at 1003 (noting that "it is difficult to

discern why Virginia Sprinkler would purchase professional liability insurance that, as Caliber One contends, does not extend coverage to breach of contract claims for 'property damage,' when that is precisely the kind of claim anticipated in its work.").

The Court notes that similarly worded exclusions have been applied in other cases. *See Mut. Ben. Grp.*, 227 F. Supp. 2d at 477. Generally, in "your product" or "your work" exclusions, claimed damages outside of the insured's own "work" or "product" are covered. *See id.* Such "exclusions permit coverage for damages to other property or for other accidental loss caused by the defective product or defective work." *Century I Joint Venture v. U.S. Fid. & Guar. Co.*, 63 Md. App. 545, 553, 493 A.2d 370, 375 (1985). Similarly, "expected or foreseeable" damage exclusions have also been upheld. *M Consulting & Exp., LLC*, 2 F. Supp. 3d at 739 (explaining that a "fail[ure] to deliver the full shipment," as required under the contract "was foreseeable and, therefore, not accidental."). In *Lerner*, the court explained that if a defect causes "unrelated and unexpected" loss, to either a third-party or a third-party's work, then this loss would not be excluded. *Lerner Corp.*, 120 Md. App. at 536. As one example, "if a collapse of the veneer had injured a user of the facility or damaged property other than the veneer itself, these may well be covered." *Id.* at 537.

It is when all exclusions come together that it becomes unclear what the E&O Endorsement covers. Given that the extrinsic evidence provided does not resolve the issue of what the E&O Endorsement covers, the contract must be construed against Everest as the drafter of the instrument. *See Trice, Geary & Myers, LLC*, 459 F. App'x at 273 ("'In the event of an ambiguity, however, extrinsic and parol evidence may be considered. If no extrinsic or parol evidence is introduced . . . it will be construed against the insurer as the drafter of the instrument.'") (quoting *Cheney v. Bell Nat. Life Ins. Co.*, 315 Md. 761, 766–67, 556 A.2d 1135,

1138 (1989) (citations omitted)). "[T]he rule applicable here is to resolve ambiguity against the drafter of the policy and in favor of coverage." *Mut. Fire, Marine & Inland Ins. Co.*, 306 Md. At 251 (collecting cases). "The insurer . . . as the drafter of the agreement, must draft the language of an exclusion 'conspicuously, plainly and clearly' and 'clearly set forth' any limitation on coverage to the insured." *White Pine Ins. Co.*, 233 Md. App. at 500 (quoting *Megonnell v. United Servs. Auto. Ass'n.*, 368 Md. 633, 656, 796 A.2d 758, 772 (2002)). "[L]imitations on coverage must be construed strictly and narrowly and 'in favor of a finding of coverage.'" *Id.*

In particular, it is exclusion m, or "impaired property" or "property not physically injured" by deficient acts of the insured, that seems to remove all coverage for negligent acts performed by an insured—rather than just limit coverage. *See* ECF No. 4-2 at 18, 26. "'[W]hen two provisions in an insurance policy 'are repugnant to one another,' 'the provision most favorable to the insured will be applied.'" *Bailer*, 344 Md. 515, 532–33 (quoting *U.S. Fire Ins. Co. v. Hilde*, 172 Ga. App. 161, 164, 322 S.E.2d 285, 288 (1984)). Upon eliminating this provision as applied to the E&O Endorsement, this Court finds that the policy makes sense: damage to Bayside's own work or product due to negligence would not be covered but claims regarding damage to third-party work or property would be covered. *See Mut. Ben. Grp.*, 227 F. Supp. 2d at 476. Under this interpretation, because the D.C. plaintiffs alleged a myriad of claims, including necessary rebuilding and repairs to the entire unit and property and not just to the fire suppression and sprinkler systems, Everest would be obligated to defend.

Similarly, the Court could construe exclusion m narrowly, which would lead to the same result. *See White Pine Ins. Co.*, 233 Md. App. at 500 (noting that "we interpret exclusionary provisions within insurance contracts narrowly"); *see also Tankovits*, 129 F. App'x at 836–37 (declining to find a policy illusory in light of construing a provision narrowly). In construing

26

exclusion m as limiting only impairment or damage to property which directly incorporates Bayside's work or product, any "indirect" damages, such as diminution in value of the property and rebuilding and repairs on other parts of the property, would be covered. *See, e.g.*, *Mut. Ben. Grp.*, F. Supp. 2d at 478 (reasoning that several exclusions were actually some variation of a "your work" or "your product" exclusion, and thus damages to things other than the insured's "product," or the house built by insured, were not excluded).

Either way, Everest would have a duty to defend. Because the Endorsement coverage is at least "ambiguous," and because of the "broad duty" to defend and the extent of the D.C. plaintiffs' allegations in the underlying complaint, the Court finds that Everest was obligated to defend Bayside in the D.C. lawsuit. *See*, *e.g.*, *Bailer*, 344 Md. at 534 ("The policy is at least ambiguous, and Erie was obliged to defend and indemnify."); *Nautilus Ins. Co.*, 602 F. Supp. 2d at 643 ("Guided by a recognition that the ambiguity of the phrase and any doubt regarding potentiality of coverage are to be resolved in favor of the insured, BSA, I conclude that Nautilus has a duty to defend.").

The Court grants Bayside's Motion for Partial Summary Judgment as to Count I. Because Bayside's role in the D.C. lawsuit has concluded, *see* ECF No. 21 at 2, the Court only decides that Everest was required to defend Bayside in the underlying D.C. lawsuit. Bayside may next attempt to prove its damages as to Count II of the Complaint. *See, e.g.*, *Selective Way Ins. Co.*, 242 Md. App. at 671 (noting that, generally "[t]he damages for breach of the contractual duty to defend are . . . the insured's expenses, including attorney fees, in defending the underlying tort action, as well as the insured's expenses and attorney fees in a separate contract or declaratory judgment action . . . to establish that there exists a duty to defend.") (internal quotations omitted).

## IV.    CONCLUSION

For the reasons discussed, the Motion to Dismiss is denied. The Motion for Partial

Summary Judgment is granted. A separate Order follows.


Dated:  March      21, 2022                          /s/_____
                                                     GEORGE J. HAZEL
                                                     United States District Judge